UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| CANDY M. HOLMES, | ) | |
| Social Security No. XXX-XX-1408, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:05-cv-142-RLY-WGH |
| | ) | |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM DECISION AND ORDER**

**I. Statement of the Case**

Plaintiff, Candy M. Holmes, seeks judicial review of a final decision of the agency, which found her not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB") or Social Security Income ("SSI") under the Social Security Act ("the Act"). 42 U.S.C. §§ 416(i), 423(d); 20 C.F.R. § 404.1520(f). The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

Plaintiff applied for DIB on March 20, 2003, and for SSI on September 16, 2003, alleging disability since October 25, 2001.[1] (R. 55-57, 374-77). The agency denied Plaintiff's application both initially and on reconsideration. (R. 26-33, 35-37, 378-80). Plaintiff appeared

---

[1] Plaintiff later informally amended her onset date to January 31, 2002. (R. 385).

and testified at a hearing before an Administrative Law Judge ("ALJ") on November 19, 2004. (R. 381-415). Plaintiff was represented at the hearing by her attorney, J. Michael Woods. (R. 381). Also testifying was a vocational expert ("VE"). The ALJ issued a decision on March 7, 2005, finding that Plaintiff was not disabled because she retained the residual functional capacity to perform a significant number of jobs in the regional economy. (R. 14-23). Plaintiff filed a request for review with the Appeals Council on March 22, 2005. (R. 10). The ALJ's decision became the agency's final decision when the Appeals Council denied Plaintiff's request for review on July 8, 2005. (R. 5-7). 20 C.F.R. §§ 404.955(a), 404.981. Plaintiff then filed a complaint on August 8, 2005, seeking judicial review of the ALJ's decision.

## II. Standard of Review

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); see also *Perkins v. Chater,* 107 F. 3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson,* 402 U.S. at 399-400. Accordingly, this court may not re-evaluate the facts, weigh the evidence anew or substitute its judgment for that of the Commissioner. *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or

not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

### III. Standard for Disability

In order to qualify for disability benefits under the Act, Plaintiff must establish that she suffers from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920. The ALJ must consider whether the claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. *Id.* The burden of proof is on plaintiff during steps one through four, and only after plaintiff has reached step five does the burden shift to the Commissioner. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

### IV. The ALJ's Decision

The ALJ, George A. Mills, III, concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 22). The ALJ continued by finding that, in

accordance with 20 C.F.R. § 416.920(b), Plaintiff had five impairments that are classified as severe: headaches, obesity, right carpel tunnel syndrome, borderline personality disorder, and depression, as well as two non-severe impairments: left knee pain and a recurring urinary tract infection. (R. 22). The ALJ concluded that none of these impairments met or were substantially similar to any of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 22). The ALJ, therefore, concluded that Plaintiff retained the residual functional capacity to lift ten pounds frequently and 20 pounds occasionally; stand, walk, and sit for six hours each in an eight-hour workday; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; should avoid extreme temperatures, hazardous machinery, and unprotected heights; and should work with minimal contact from co-workers. (R. 22). The ALJ determined that, despite these limitations, Plaintiff could still perform her past work. (R. 22). The ALJ went on to conclude that even if Plaintiff could not perform her past work, she was still able to perform some work; Plaintiff was a "younger" individual, with a "limited education," who had some transferable skills, and that, based on her limitations, she retained the residual functional capacity to perform a limited range of light work including 2,500 hand packer jobs, 2,000 inspector jobs, and 3,000 assembler jobs. (R. 23). The ALJ concluded by finding that Plaintiff was not under a disability. (R. 23).

## V.  Issues

The court concludes that Plaintiff has raised four issues in her Memorandum in Support of Plaintiff ("Brief"), and in her Response to Memorandum filed by the Defendant ("Response"). The issues are as follows:

    1.    Did the ALJ properly consider the evidence from Dr. Greg Unfried, Plaintiff's

        treating physician?

2. Did the ALJ properly consider Plaintiff's edema?

3. Did the ALJ properly consider the evidence concerning Plaintiff's headaches in his residual functional capacity assessment?

4. Did the ALJ give a full and complete hypothetical question to the VE?

**Issue 1:** **Did the ALJ properly consider the evidence from Dr. Greg Unfried, Plaintiff's treating physician?**

Plaintiff's first argument, concerning Exhibit 10F (R. 235-45), is that the ALJ "granted the report of a treating physician that is a specialist no weight because he did not even discuss this multiple page detailed report in the decision." (Brief at 6). Later, in Plaintiff's reply brief, Plaintiff argues that the ALJ failed to discuss the treating physician's "limitations," and that the ALJ simply "forgot" Dr. Unfried's opinion when coming to his conclusions about Plaintiff's residual functional capacity ("RFC").

The court first notes that Plaintiff is incorrect when she claims that the ALJ "did not discuss" or "forgot" Dr. Unfried's report. In fact, the ALJ specifically mentions Exhibit 10F and goes into significant detail about the findings in it. (R. 18-19). The question that remains is whether the ALJ gave it appropriate weight.

The court further notes that there is a question concerning whether the report at Exhibit 10F is properly attributable to Dr. Unfried. Exhibit 10F is a report that seems to have been authored by Karen Warner, who is apparently a member of the Academy of Certified Social

Workers and a Licensed Clinical Social Worker.  The report appears to be the result of testing administered by Warner (R. 235-42), as well as progress notes dictated and signed by Warner (R. 243-45).  The only indication that Dr. Unfried had anything to do with the report is a cryptic "countersignature" by some "MD" who might or might not be Dr. Unfried.

Under 20 C.F.R. § 404.1513(d) it is clearly proper for the Social Security Administration to consider the opinions of public and private social welfare agency personnel to determine the "severity of an impairment and how it affects your ability to work."  Warner's report appears, on its face, to be quite thorough and professional.  Therefore, it can be used for some purposes in this evaluation.

However, the regulations do specifically require evidence from "acceptable medical sources to establish whether you *have* a medically determinable impairment."  20 C.F.R. § 404.1513(a).  Licensed social workers are *not* among the list of "acceptable medical providers" in the regulations.  The distinction drawn in this instance then appears to be that if Exhibit 10F is Dr. Unfried's report, then it is acceptable to establish the existence of Plaintiff's impairment.  If the report was not authored by Dr. Unfried, it can be used to establish the extent of an impairment if that impairment is established by other sources.

In addition to Exhibit 10F, there are other medical records that are clearly from Dr. Unfried within the record (R. 337-39, 362), as well as other records from Warner and others at the Mental Health Center.  (R. 340-54, 363).  From the totality of these records the court can conclude that in October 2003 Dr. Unfried diagnosed Plaintiff with Borderline Personality Disorder of a severe enough degree that additional counseling and medication was warranted.

-6-

(R. 339). This diagnosis was based on August 2003 testing and consultations conducted by Warner. The counseling and medication continued through August 2004 – a period of one year. (R. 262-63).

The August 2003 evaluation establishes some evidence to show Plaintiff's Borderline Personality Disorder was of sufficient severity to impede her ability to work by virtue of the GAF score of 50. The ALJ did discuss the report but did not conclude that Plaintiff's limitations addressed in this evaluation significantly impaired her ability to function in the workplace.

> The basis of the ALJ's decision is found in this language from the opinion:
>
> . . . . The claimant continued with treatment at Southwestern Indiana Mental Health Center including individual psychiatric appointments for medication adjustment, and group therapy for her aggression and dysfunctional relationships. The records document many missed appointments (Exs. 17F and 19F).
>
> The undersigned finds that the claimant's testimony was sincere but quite inconsistent with the medical and/or other evidence of record. Although the claimant claims significant limitations in her ability to function, she also reported a fairly full range of daily activities that include making lunch for her husband and getting him off to work, taking care of her three dependent children, performing all household chores such as laundry, shopping, washing dishes, making beds, cooking, and cleaning. Although the claimant has been described as physically aggressive, she has never been arrested for that behavior. Thus, it appears that the claimant has control over her temper or is able to act appropriately when necessary. There are several references in the record that the claimant has worked on a part-time basis selling Avon and babysitting. The claimant's history of drug seeking behavior for pain medications also reflects negatively on her credibility and report of symptoms.

(R. 19). From this language we discern that the ALJ believed that the continued therapy and medication during her treatment at the Southwestern Indiana Mental Health Center improved

Plaintiff's mental health condition to a point where it no longer significantly impaired her ability to perform simple tasks with minimal contact with her coworkers. (R. 22).[2]

The record does reflect – as the ALJ found – that Plaintiff missed many scheduled appointments. (R. 338, 340, 343, 344-46, 349-50, 353-54). A number of the entries also indicate that Plaintiff was "doing very well" (R. 342, 350), "feeling better" (R. 346, 349), and calm. (R. 343, 345). The record also reflected that Plaintiff worked a few hours. (R. 343). Many of the notes, however, also describe Plaintiff as "having difficulty" (R. 337-38), stressed out, or having "many stressors." (R. 337, 340, 345).

While a different ALJ could have concluded from the same evidence that Plaintiff's mental condition *did* impact her ability to work, this court is not permitted to re-weigh the

---

[2]The argument section of Plaintiff's Brief does not include any allegations that Plaintiff should have been found disabled at step three of the five-step evaluation process, but Plaintiff does state (in her summary of the ALJ's decision) that her counsel "believes that Ms. Holmes meets the listing for effective [sic] disorders 12.04 and 12.08 personality disorder." (Brief at 5). This court finds that Plaintiff has waived any argument that her condition met or equaled any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. The Plaintiff's Brief fails to outline the requirements for meeting either listing 12.04 or 12.08 despite the fact that, in order to meet a specific listing, Plaintiff must meet *all of the elements* of the listed impairment. *Rice v. Barnhart,* 384 F.3d 363, 369 (7th Cir. 2004).

Even if this argument is not waived, the ALJ did address the listings in the following words:

> Since there is evidence that claimant suffers from a mental condition, the undersigned . . . has considered the "B" and "C" criteria of Listings at 12.04 and 12.08. As a result of the claimant's mental condition, the claimant is found to have "mild" restrictions of activities of daily living, "moderate" difficulties in maintaining social functioning, and "moderate" difficulties in maintaining concentration, persistence, or pace. The claimant has not expressed repeated episodes of decompensation, each of extended duration. That category is therefore rated as "none."

(R. 19). The court's review of the evidence, as detailed more fully in the opinion, establishes substantial evidence to support the ALJ's conclusion on the "B" criteria.

evidence or substitute its own judgment for that of the ALJ. A reading of Dr. Unfried's notes can support a conclusion that Plaintiff's Borderline Personality Disorder was responsive to treatment and – while initially severe – did not remain severe for a protracted period of time.

There is, therefore, substantial evidence to support the ALJ's conclusion that Plaintiff's mental condition was not severe for the necessary period of time, and did not totally impair her ability to work. The ALJ therefore properly considered Dr. Unfried's evidence.

**Issue 2:** **Did the ALJ properly consider Plaintiff's edema?**

Plaintiff argues that: "it is undisputed that Plaintiff suffers from chronic swelling in her lower extremities and has to spend a great deal of the day with her feet elevated because of this impairment. Unfortunately, the [ALJ] did not in any way discuss her edema, factored into her RFC etc." (Brief at 9 (internal citations omitted)).

Plaintiff is correct that the ALJ did not discuss the edema in his opinion. However, the evidence pointed to by Plaintiff to show the existence of edema is limited to her own testimony at the hearing (R. 404) and one reference to "swelling in her hands and lower extremities" on one visit to Teresa A. Beckman, M.D., in April 2002. (R. 156).

The court finds no reason to remand this case because of the ALJ's exclusion of edema. The court notes that there are records of two examinations by Dr. Beckman on January 31, 2002, and April 16, 2002, the first finding no evidence of edema, while the second did note edema. (R. 155-56). An examination from November 20, 2002, by Roderick L. Warren, M.D., gave no indication that Plaintiff suffered from edema. (R. 251-52). Plaintiff was then examined by Brian Atwood, M.D., on October 4, 2003, and Dr. Atwood explicitly stated that there was no evidence of edema. (R. 247). Visits to Donald R. Brake, Jr., M.D., on January 26,

2004, and May 11, 2004, revealed numerous problems, but no mention of edema. (R. 297, 299). Finally, Alexander D. Llana, M.D., indicated "+2 pitting edema" but in the same analysis said there was no evidence of edema, and then went on to suggest that any edema could be caused by medications she was taking. (R. 271-73).

Based on this evidence, the ALJ was not obligated to conclude that Plaintiff suffered from edema or that the edema was a severe impairment. An impairment is severe only if it is expected to result in death or last for a period of more than one year. 20 C.F.R. § 404.1509. In this case, none of the relevant evidence pointed to a conclusion that Plaintiff's edema was severe because only one significant discussion of Plaintiff's edema can be found in the medical records. Dr. Llana specifically stated that he thought Plaintiff did have edema, but that it could be a result of medication and he did not indicate a belief that it was going to last for the requisite time frame. Hence, there was no error in the exclusion of edema from the ALJ's discussion.

**Issue 3:** **Did the ALJ properly consider the evidence concerning Plaintiff's headaches in his residual functional capacity assessment?**

Plaintiff next argues that the ALJ failed to consider evidence of Plaintiff's headaches in his RFC determination. (Brief at 7-8). Specifically, Plaintiff argues that the ALJ was "confused" about or misunderstood the report from Bette G. Maybury, M.D., about the nature of her headaches. Plaintiff argues that the medical evidence shows that she has headaches that last for two days and, in some circumstances, up to five days, and that these headaches occur every two or three days. It is important to note that the only "medical evidence" mentioning the frequency

and duration of Plaintiff's headaches are Plaintiff's own history as given to Dr. Donna Lorenzo-Buetel in April 2002.

The ALJ did, in fact, discuss Plaintiff's headaches in the opinion and found them to be "muscle contraction/tension type" and severe as that term is defined in the Social Security regulations. (R. 16). The ALJ also discussed the medical evidence related to headaches. (R. 18). He specifically discussed the records of Dr. Lorenzo-Buetel (R. 171-72); the steroid injection in May and June 2002 (R. 167-70); the reports of visits to the Family Practice Center (R. 174-86); an evaluation by neurologist Dr. Roderick Warren, M.D. (R. 187-88); and Dr. Warren's referral to the Indiana University Department of Neurology consultation which was conducted by Dr. Maybury (R. 231). These were, in fact, all of the medical records available concerning Plaintiff's headaches.

The court's review finds substantial evidence to support the ALJ's finding that these headaches are tension-type headaches subject to control by appropriate lifestyle changes and medication; especially the evidence from Dr. Warren and Dr. Lorenzo-Buetel. Specifically, Dr. Lorenzo-Buetel indicated that Plaintiff could return to the clinic on a "PRN" basis after the steroidal injections were completed. As the ALJ pointed out, there is no indication a return was sought by Plaintiff – one implication from which can be drawn that Plaintiff's headaches were not disabling for two to five days and occurring as often as Plaintiff testified. Additionally, Dr. Warren found the headaches to be "muscle contraction/tension" headaches based on his examination, and found that these should not be managed using "acute relief medication like Lortab 10." (R. 188).

It is correct, as Plaintiff asserts, that Dr. Maybury concluded that Plaintiff's headaches are migraine headaches. (R. 233). However, Dr. Maybury's treatment plan was to decrease acute medication and caffeine. Dr. Maybury suggests "with her many comorbid factors, she needs to have all her other health problems addressed, particularly her psychiatric problems. These sounds [sic] rather major and severe and treatment may contribute largely to improvement in her headache disorder." (R. 233). Dr. Maybury did not schedule a return visit and concluded with a statement that the control of Plaintiff's headaches "depend[s] in large part on what she herself is able to do." (R. 233-34). From Dr. Maybury's records, it is permissible to draw the inference that Plaintiff's headaches were subject to control, and were not chronic or to the degree asserted by Plaintiff.

The court concludes, therefore, that the ALJ did not err when he concluded that Plaintiff's headaches were not sufficiently severe to further reduce Plaintiff's RFC assessment.

**Issue 4:    Did the ALJ give a full and complete hypothetical question to the VE?**

Plaintiff's final argument is that the ALJ erred in asking improper hypothetical questions when examining the vocational expert at Plaintiff's hearing. It is true that hypothetical questions "posed by the ALJ to the VE must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron v. Shalala,* 19 F.3d 329, 337 (7th Cir. 1994). But, an ALJ need not ask questions that take into account every detail of Plaintiff's impairments "especially if the record demonstrates that the VE reviewed all of the evidence prior to the hearing." *Id.* In this case the following interaction took place between the ALJ and the VE:

> ALJ: All right Ms. Courtney, you've been present throughout the entire hearing this morning, is that correct?
> VE: Yes.
> ALJ: Have you had a chance to review the file?
> VE: Yes, Your Honor.
> ALJ: Is there any additional information you would need from the claimant before you could respond to certain questions?
> VE: I don't think so.

(R. 406-07). Based on this interaction, the court is convinced that any failure to explicitly mention Plaintiff's headaches during a hypothetical question to the VE was harmless. Thus, the court concludes that the ALJ's error is harmless.

## VI.  Conclusion

The ALJ's decision is supported by substantial evidence, and any error in the hypothetical questions posed was harmless. The ALJ's decision is, therefore, **AFFIRMED**. Plaintiff's Complaint is **DISMISSED**.

**SO ORDERED.**

Dated: September 7, 2006.

                                                         RICHARD L. YOUNG, JUDGE
                                                         United States District Court
                                                         Southern District of Indiana

Electronic copies to:

J. Michael Woods
WOODS & WOODS
mwoods@woodslawyers.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov